IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LUIS A. RAMIREZ,

                Plaintiff,                        OPINION AND ORDER

        v.                                    09-cv-314-bbc

DR. SULIENE, RICK RAEMISCH,
SANDRA SITZMAN, LORI ALSUM,
LESLIE WINSLOW-STANLEY, FAYE HART,
THOMAS SCHOENEBERG, CURTIS DELONG,
STANLEY MADAY, JR., ISAAC HART, MARK ISAACSON,
VICTOR TRIMBLE, MAURY THILL, JACOB ZIMMERMAN,
WILLIAM LEFEVRE, MICKEY PAUL PAFFORD,
LUCAS WOGERNESE, and BRIAN HERBRAND,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Luis Ramirez, a prisoner at the Columbia Correctional Institution in Portage,

Wisconsin, is proceeding on several Eighth Amendment deliberate indifference claims.

(Although plaintiff states in his brief in opposition to defendants' motion for summary

judgment that he was allowed leave to proceed on a state law claim, I allowed him to proceed

only on his Eighth Amendment claims.)  First, plaintiff alleges that defendants Dr. Dahlia

Suliene, Rick Raemisch, Sandra Sitzman, Leslie Winslow-Stanley, Curtis DeLong, Stanley

1

Maday, Jr., Isaac Hart, Mark Isaacson, Victor Trimble, Maury Thill, Jacob Zimmerman, William LeFevre, Mickey Paul Pafford, Lucas Wogernese and Brian Herbrand were deliberately indifferent to his methadone withdrawal symptoms.  Second, he alleges that defendant Suliene refused to treat his foot pain with methadone.  Third, he alleges that defendants Suliene and Alsum ignored the serious side effects he experienced from taking Tramadol.  (Although plaintiff alleged in his complaint that the correctional officer defendants also knew about his severe Tramadol side effects, he now asserts that he told only Suliene and Alsum about them.)  Plaintiff has voluntarily dismissed defendants Faye Hart and Thomas Schoenberg.

The case is before the court on the parties' cross motions for summary judgment.  Dkt. ##46 and 52.  Defendants have moved for summary judgment on all of plaintiff's claims, and plaintiff has moved for partial summary judgment on his claims against defendant Suliene.  Because plaintiff has failed to adduce sufficient evidence from which a reasonable jury could find that defendants other than Isaacson, Trimble and DeLong were deliberately indifferent to his serious medical needs, I will grant defendants' motion for summary judgment with respect to plaintiff's claims against those defendants and deny plaintiff's motion for partial summary judgment on his claims against defendant Suliene.  I find that plaintiff has adduced sufficient evidence from which a reasonable jury could determine that defendants Isaacson, Trimble and DeLong acted with deliberate indifference

to plaintiff's withdrawal symptoms and foot pain.  Therefore, I am denying defendants'
motion for summary judgment with respect to plaintiff's Eighth Amendment claims against
these defendants.

For the purpose of deciding this motion, I find the following facts to be material and
undisputed.


## UNDISPUTED FACTS

### A.  <u>Parties</u>

Plaintiff Luis A. Ramirez is an inmate incarcerated at the Columbia Correctional
Institution in Portage, Wisconsin.  Defendant Dr. Dahlia Suliene is a medical doctor at the
institution.  Defendant Rick Raemisch is Secretary of the Wisconsin Department of
Corrections.  Defendant Sandra Sitzman was the health services unit manager at the
Columbia Correctional Institution in 2007.  She was replaced by defendant Lori Alsum, who
served in that position until December 5, 2009.  At all times material to this action,
defendants Lesley Winslow-Stanley, Curtis DeLong, Stanley Maday, Isaac Hart, Mark
Isaacson, Victor Trimble, Maury Thill, Jacob Zimmerman, William LeFevre, Mickey Paul
Pafford, Lucas Wogernese and Brian Herbrand were correctional officers at the Columbia
Correctional Institution.

B.  Methadone Withdrawal Symptoms

Between 2005 and February 2007, plaintiff was incarcerated at the Waupun Correctional Institution, where he was prescribed methadone for complex regional pain syndrome.  Plaintiff was prescribed methadone on December 28, 2006 for thirty days, or until January 28, 2007.  However, plaintiff's medical records show that he took his last dose of methadone at the Waupun Correctional Institution on the morning of February 7, 2007, just before he was transferred to the Columbia Correctional Institution, and that he did not have any methadone after that.  (The parties dispute whether plaintiff had a prescription for methadone at the time of his transfer.)  That same day, plaintiff filed a health services request, stating that his methadone had been discontinued but that he did not need to see health services staff.  On February 22, 2007, plaintiff submitted a health services request, stating that he had a large twitch because his methadone had been discontinued, but indicated again that he did not wish to see health services staff.  On February 7, 11 and 18 and March 6, 7, 13 and 14, 2007, plaintiff submitted seven other health services requests, asking either that he not be fed peas because he was allergic to them or that he be given various medical tests for other conditions.

Plaintiff did not complain about any methadone withdrawal symptoms in the health services requests that he made after being transferred to Columbia Correctional Institution. (The parties dispute whether plaintiff informed the defendant correctional officer about his

4

methadone withdrawal symptoms or whether they observed such symptoms.) If plaintiff had informed a correctional officer about his pain or medical condition, the officer would have informed the health services unit, which would have advised the officer whether plaintiff had to be seen immediately. If the concern was not immediate, the officer would have given plaintiff a health services request slip to fill out. Correctional officers do not have the authority to schedule health services appointments.

In addition to health services requests, plaintiff filed an offender complaint on February 7, 2007, stating that discontinuing his methadone posed a danger to him and left him in unbearable pain. On February 12, the inmate complaint examiner dismissed plaintiff's complaint with modification, stating that defendant Sandra Sitzman, the health services unit manager, had indicated that plaintiff did not have a current prescription for methadone and that he would be seen by a doctor to assess his medication needs. Defendant Dr. Suliene did not become aware of plaintiff's health services requests or offender complaint until mid-March 2007. (Although plaintiff attempts to dispute this fact with evidence that the inmate complaint examiner sent an email copy of her decision to Suliene, the decision is dated March 14, 2007.) Upon the corrections complaint examiner's recommendation, defendant Raemisch dismissed plaintiff's complaint on March 19, 2007.

## C.  Foot Pain

Plaintiff complained about foot pain in his February 7 and 22, 2007 health services requests.  On March 28, 2007, plaintiff saw Dr. Suliene, complaining of shooting pain in the bottom of his foot.  Plaintiff requested a prescription for methadone.  Because of the neuropathic nature of plaintiff's pain, Suliene prescribed 300 milligrams of Gabapentin for the pain.  Plaintiff filed a health services request on April 28, 2007, complaining that Gabapentin did not help his pain in the past and that no one had examined his foot.  On April 30, 2007, Suliene noted that plaintiff was not on an adequate dose of Gabapentin and increased his prescription from 300 to 600 milligrams.   On May 25, 2007, plaintiff submitted another health services request, stating that he needed methadone because the Gabapentin was not working.  Suliene responded in writing, asking plaintiff whether he was taking the increased dosage of Gabapentin and advising him that he had an upcoming doctor's appointment.  Plaintiff failed to respond to Suliene's question.  On June 13, 2007, plaintiff wrote in a health services request that he had not taken the Gabapentin for two and a half months.  That same day, plaintiff signed a form stating that he voluntarily refused to take Gabapentin.

On June 21, 2007, plaintiff saw Dr. Suliene, stating that he had been told he had complex regional pain syndrome.  He requested a methadone prescription.   Upon examination, Suliene found that plaintiff did not have complex regional pain syndrome,

prescribed Tylenol for pain and requested a neurology consultation for plaintiff. After this appointment, Suliene asked the correctional officers to log plaintiff's daily activities. The activity log showed that plaintiff's daily activities did not appear to be limited by pain. On June 24, 2007, plaintiff reported in a health services request that he had severe foot pain and pain in his left lung. Suliene's request for a neurology consultation was denied because the correctional officers' documentation of plaintiff's daily activities indicated that plaintiff was in less pain than he reported.

During July, August and September 2007, plaintiff submitted several health services requests complaining about foot pain. During an August 6, 2007 sick call appointment, a nurse noted that plaintiff was continuing his previously reported exercise regimen and that his pain did not seem to affect his functioning or activities. On September 3, 2007, Dr. Suliene responded to plaintiff's health services request by asking plaintiff whether he would like to start taking Gabapentin again. On August 8 and August 14, 2007, plaintiff refused to go to medical exams that were scheduled to address his foot pain. On September 26, 2007, plaintiff saw Dr. Suliene and reported foot pain. Suliene concluded that the severity of plaintiff's pain did not require methadone but prescribed propoxyphene because plaintiff had stated it had helped his pain in the past. On October 2, 2007, Suliene changed the prescription to Darvocet N, which is the brand name of propoxyphene.

Plaintiff returned to see Dr. Suliene on November 8, 2007, again complaining of foot pain. Suliene increased plaintiff's Darvocet N to four times a day. Plaintiff saw Suliene on December 6, 2007 but did not mention any foot pain. On January 8, 2008, plaintiff told Suliene he had had no change in his foot pain. Plaintiff wanted the Darvocet N prescription changed to methadone. He also requested an ankle sleeve, which Suliene ordered. Suliene prescribed Tramadol, a non-narcotic analgesic, but discontinued it on January 14 because it would interfere with the amitriptyline that plaintiff was taking. Instead, she continued plaintiff on Darvocet N.

On February 6, 2008, plaintiff saw Dr. Suliene and complained about pain and numbness in his foot. Between February 6 and June 26, 2008, plaintiff did not complain about foot pain. On June 26, 2008, correctional officers reported to health services staff that plaintiff appeared to be walking with difficulty because of a sore foot. A nurse saw plaintiff the next day. Plaintiff told her that he had heel pain because he did a cartwheel in his cell and hit his heel against the wall. At an August 29, 2008 appointment with a nurse, plaintiff complained of heel pain because he did a "windmill" in his cell and hit his heel against the wall.

On October 21, 2009, plaintiff saw Dr. Stanek, a neurologist at the University of Wisconsin Hospital and Clinics. After hearing plaintiff's complaints of pain, Stanek diagnosed traumatic neuropathy. He recommended prescribing Gabapentin, nortipityline

and a small dose of methadone.  In an October 30, 2009 telephone conversation, Dr. Suliene and Dr. Stanek agreed that if Gabapentin and nortriptyline were ineffective, methadone would be added to the combination.  Suliene ordered a podiatry consultation, which plaintiff underwent on November 23, 2009.

### D.  Tramadol

After plaintiff stopped taking amitriptyline on February 1, 2008, Dr. Suliene prescribed Tramadol for plaintiff.  On October 9, 2008, plaintiff saw Dr. Suliene and asked that his Tramadol be increased.  Suliene agreed.  On November 21, 2008, a nurse on segregation rounds talked to plaintiff, who reported that he was "allergic" to Tramadol.  The nurse wrote that plaintiff "displays drug seeking behaviors."  On February 23, 2009, plaintiff saw Suliene and reported that his foot hurt when it was cold and that the Tramadol was not effective.  Suliene increased plaintiff's Tramadol dosage.  On July 10, 2009, plaintiff reported to a nurse that the Tramadol was not working.

Dr. Suliene consulted with Dr. Maier, plaintiff's psychiatrist, and they concluded that plaintiff was being treated properly with Tramadol.  Plaintiff was not taking any medications that would interact with Tramadol.  On January 13, 2009, plaintiff told Maier that if he stopped taking Tramadol, his pain would be worse.  On July 8, 2009, Maier told plaintiff that because he was taking Tramadol voluntarily, he could stop taking it if he thought it was

9

causing him harm.  Maier also explained to plaintiff that if he stopped Tramadol, his condition might have improved enough that he would not need pain medication or that his doctors could reassess his pain situation and possibly find an alternate analgesic for his pain. Plaintiff was not interested in either of those options.  When Maier asked plaintiff whether he wanted to be taken off Tramadol, plaintiff told him that he wanted to continue Tramadol and pursue his "legal options."

Plaintiff continued to take Tramadol through October 2009.  Plaintiff did not tell any correctional officer that he was experiencing severe side effects from Tramadol.  Since 2008, plaintiff frequently reported in his psychiatric sessions that he is not thinking of harming himself.

### E.  Actions of Defendants Sitzman, Alsum and Raemisch

Defendant Sitzman's only involvement in plaintiff's health care was to (1) review and respond to his March 14, 2007 health services request related to tests for diabetes, pancreatitis, hyperglycemia and other conditions unrelated to methadone or his pain and (2) review his medical record and provide information to the inmate complaint examiner assigned to handle his offender complaints related to the discontinuation of his methadone. With respect to Offender Complaint CCI-2007-4518, Sitzman told the inmate complaint examiner that

> In review of Mr. Ramirez's medical record his last Methadone order was
> written on 12/28/06 for 30 days and was not renewed by the physician or NP
> at WCI.   Mr. Ramirez was transferred to CCI on 2/7/07, so we did not
> discontinue the medication as alleged. I will have the staff schedule him an
> appointment with the MD and she can assess his needs and determine if he
> still requires pain medication.

With respect to Offender Complaint CCI-2007-13061, Sitzman told the inmate complaint

examiner that

> In reviewing Mr. Ramirez's medical record, he was evaluated by Dr. Suliene
> on 3/28/07 for his left foot pain.  After a face-to-face encounter/evaluation and
> review of Mr. Ramirez's medical record, Dr. Suliene choose to order
> Gabapentin 300 mg BID for his chronic complaints of pain, instead of
> restarting the Methadone.  In follow-up and in response to Mr. Ramirez's c/o
> of ineffective pain control, Dr. Suliene did increase the Gabapentin to 600 mg
> QID on 4/28/07.  In reviewing the medical record there have been no further
> increases ordered, so I assume Mr. Ramirez's pain is being controlled with the
> Gabapentin dosage he was prescribed on 4/28/07, which indicates there is no
> need for Methadone.   Dr. Suliene has decided not to renew Methadone at
> this time as she believes that the Gabapentin is better suited to Mr. Ramirez's
> chronic left foot pain.  She has ordered routine follow-up appts. to monitor
> the effectiveness of her treatment plan.

Defendant Alsum's involvement in plaintiff's health care was limited to (1) reviewing

relevant portions of his medical record and providing information to the inmate complaint

examiner after plaintiff filed Offender Complaints CCI-2007-18787, CCI-2008-1852,

CCI-2008-8221, CCI-2008-28503 and CCI-2008-29803; and (2) reviewing and responding

to health services requests that he made on January 10, 2008 (request for information on

Tramadol), on March 12, 2008 (complaint about being taken off methadone), and on March 13, 2008 (request to donate part of his liver).

Defendant Raemisch made the final agency decision to adopt the recommendation of the corrections complaint examiner and deny plaintiff's Offender Complaints CCI-2007-18787, CCI-2007-13061 and CCI-2007-4518.   In making his decisions, Raemisch did not personally examine plaintiff's medical records or speak with anyone who had provided medical care to him.   Raemisch relied upon the corrections complaint examiner's statement that plaintiff's medical care concerns were reviewed and decided by the Bureau of Health Service's Regional Nursing Coordinator.

## DISPUTED FACTS

Plaintiff avers that after arriving at the Columbia Correctional Institution, he experienced the following methadone withdrawal symptoms:  itching, vomiting, dizziness, tremors, cold sweats, weight loss, inability to sleep and suicidal thoughts.  He avers that he told defendant Isaacson that he was in pain and defendant Thill that he needed methadone. According to plaintiff, Isaacson and Thill responded only by telling him to make a health services request.  When plaintiff told defendant DeLong "what was going on," DeLong brought him a health services request form, which he filled out and submitted.  Plaintiff also

12

avers that he gave an offender complaint to defendant Winslow-Stanley about not being continued on methadone.

Plaintiff avers that on February 8, 2007, defendant Isaac Hart observed him vomiting and asked plaintiff whether he wanted to make a health services request. Plaintiff avers that he told Hart that he needed a doctor and that Hart came back with only a health services request form, which plaintiff ripped up. Plaintiff avers that on February 9, he informed defendants Trimble and Isaacson that he was sick and needed to see a nurse and that they told him to make out a health services request. According to plaintiff, on February 10, 2007, he told defendants Trimble, Isaacson and DeLong that he needed a doctor. Plaintiff avers that they told him that there was no doctor on duty and advised him to fill out a health services request. He avers that on February 11, 2007, he told defendants Trimble, Isaacson and DeLong that he was going through withdrawal but they told him because it was Sunday, nothing could be done. Plaintiff avers that on February 12, 2007, he told defendant LeFevre that he was going through withdrawal and needed to see a doctor but LeFevre told him to submit a health services request. He avers that in mid-February 2007, he told defendants Zimmerman, Pafford, Maday, Herbrand and Wogernese that he was sick, his foot hurt and he needed to see a doctor, but they did not help him.

All of the defendant correctional officer deny having any knowledge that plaintiff was experiencing pain or methadone withdrawal symptoms.

13

The parties dispute whether plaintiff admitted to a nurse on June 25, 2007, that he was doing 1000 jumping jacks, 500 pushups, 1500 curls and running in place for two to three hours as a daily exercise routine.  Defendants produced a record in which the nurse noted during a sick call appointment that plaintiff had reported that although his foot and lungs "kinda hurt," he did 1000 jumping jacks, 500 pushups, 1500 curls and ran in place for two to three hours.  Plaintiff avers that this is an incorrect reporting of what he told the nurse.  He avers that he stated that those activities are what used to constitute his exercise routine when he was taking methadone.

The parties dispute whether plaintiff had severe side effects to Tramadol.  Plaintiff avers that Tramadol made him angry and caused him to have "strong thoughts of suicide." He avers that he told Suliene and Alsum about those side effects but that they did nothing in response.  He avers that as a result of those side effects, another doctor put him on observation on March 18, 2009 and on one other occasion.  Plaintiff avers that after stopping Tramadol in October 2009, the side effects stopped.  In response, defendants point to Dr. Maier's opinion that plaintiff's behavioral problems and angry moods were attributable to his antisocial personality disorder and not to Tramadol.  They have produced evidence that Maier and other psychiatrists who examined plaintiff in the past two years agreed that plaintiff was not suicidal and that plaintiff reported that he was not thinking of harming himself.

14

OPINION

To survive summary judgment on his Eighth Amendment claims, plaintiff must propose facts from which a reasonable jury could find that defendants' refusal to treat his Methadone withdrawal symptoms, his foot pain and his severe side effects from taking Tramadol constituted "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 103 (1976). A medical need may be serious if it is life-threatening, if it carries a risk of permanent serious impairment if it is left untreated or if it results in needless pain and suffering when it is not treated, Gutierrez v. Peters, 111 F.3d 1364, 1371-73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825, 837 (1994). A serious medical need may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006). The condition does not have to be life threatening. Id. A medical need may be serious if it "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), causes pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or otherwise subjects the prisoner to a substantial risk of serious harm.

Even if plaintiff can show that he had a serious medical need, he still must show that defendants were deliberately indifferent to that need. Farmer, 511 U.S. at 837. Deliberate

15

indifference means that prison officials were aware that the prisoner needed medical treatment, but disregarded the risk by failing to take reasonable measures.  Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).  Inadvertent error, negligence, gross negligence and ordinary malpractice on the part of prison officials are not cruel and unusual punishment within the meaning of the Eighth Amendment.  Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996); Snipes v. DeTella, 95 F.3d 586, 590-91 (7th Cir. 1996).  Similarly, disagreement with a doctor's medical judgment, incorrect diagnosis or improper treatment resulting from negligence is insufficient to state an Eighth Amendment claim.  Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997); Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261 (7th Cir. 1996).  In other words, the treatment must have been "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition," Snipes, 95 F.3d at 592 (internal quotations omitted), or so far afield of accepted professional standards as to imply that it was not actually based on a medical judgment, Estate of Cole, 94 F.3d at 262.

Under these standards, therefore, the deliberate indifference prong of plaintiff's claim has three elements:

1.      Did plaintiff need medical treatment?

2.      Did defendants know that plaintiff needed treatment?

16

    3.      Despite their awareness of the need, did defendants fail to take reasonable measures to provide the necessary treatment?

Because plaintiff has the burden to prove his case at trial, it is his burden on summary judgment to come forward with enough evidence on each of these elements to show that a reasonable jury could find in his favor.  Borello v. Allison, 446 F.3d 742, 748 (7th Cir. 2006); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).

Although it is undisputed that plaintiff had pain in his foot for which he had been taking methadone until his transfer to Columbia Correctional Institution on February 7, 2007, it is unclear how severe his pain or other symptoms were after he stopped taking methadone.  Plaintiff avers in his affidavit that for two weeks after stopping methadone, he suffered from itching, vomiting, dizziness, tremors, cold sweats and suicidal thoughts. However, there is no medical record supporting plaintiff's averment that he experienced these symptoms.  Plaintiff failed to mention his alleged methadone withdrawal symptoms in the nine health services requests that he made in February and March 2007.  Further, in the two health services requests in which he discussed his pain and need for a methadone prescription (February 7 and 22, 2007), he noted specifically that he did not need to see health services unit staff.  There is similar conflicting evidence with respect to his allegedly unbearable foot pain.  It is undisputed that plaintiff was able to function normally and even do "windmills" and other activities during certain periods of time and that he did not

17

complain of pain for significant periods of time.  Finally, the parties disagree over the cause of plaintiff's reported increase in anger and suicidal thoughts.  Plaintiff avers that these symptoms surfaced after he started taking Tramadol and subsided when he stopped. Defendants have produced evidence that plaintiff denied suicidal thoughts while he was on Tramadol and that his psychiatrists attributed his anger to his antisocial personality disorder.

Because the nature and severity of plaintiff's medical conditions are in dispute, I will assume for the purpose of deciding the parties' motions for summary judgment that plaintiff's methadone withdrawal symptoms, foot pain and self-reported side effects to Tramadol constituted serious medical needs for which he needed treatment.  The next question is whether defendants knew about those needs and failed to take reasonable measures in response.

## A.  The Correctional Officer Defendants

The parties dispute whether defendants Isaac Hart, DeLong, Winslow-Stanley, Trimble, Isaacson, LeFevre, Pafford, Maday, Herbrand, Wogernese, Zimmerman and Thill knew about plaintiff's foot pain or any of his alleged methadone withdrawal symptoms and failed to get him immediate medical assistance.  However, even assuming that all of plaintiff's averments about what he told these officers are true, a reasonable jury would not

18

be able to conclude that most of these defendants acted with deliberate indifference to plaintiff's medical needs.

Plaintiff provides very few details about what he told defendants Thill, Winslow-Stanley, Hart, LeFevre, Zimmerman, Pafford, Maday, Herbrand and Wogernese.  He avers only generally that he told Thill that he needed methadone, handed defendant Winslow-Stanley an offender complaint to submit, told LeFevre on one occasion that he was going through "withdrawal" and needed a doctor and that he told Zimmerman, Pafford, Maday, Herbrand and Wogernese on one occasion that he was sick, his foot hurt and he needed to see a doctor.  According to plaintiff, they responded by telling him to make out a health services request.

Although I understand that plaintiff would have preferred that these correctional officers insist that he be seen by a doctor, nothing in the record indicates that they had any reason to do so, let alone that they had a duty to do so under the circumstances.  Telling plaintiff to complete a health services request was a reasonable and appropriate response to plaintiff's admittedly vague complaints of sickness and unspecified reports of pain and withdrawal.  Plaintiff has not proposed any facts showing that these defendants knew the nature or severity of his illness or that they prevented him from seeing a doctor.  In fact, plaintiff made nine health services requests in February and March 2007 and filed an offender complaint on February 7, 2007.

Although plaintiff avers that defendant Isaac Hart actually observed him vomit, he has no other evidence to prove that Hart knew that plaintiff was seriously ill as a result of withdrawing from methadone.  For all Hart knew, plaintiff's one-time vomiting was the result of an upset stomach or another minor condition.  It was reasonable for Hart to conclude that plaintiff was not seriously ill because plaintiff refused to complete the health services request form that Hart brought him.

Without more, a reasonable jury could not conclude that defendants Thill, Winslow-Stanley, Hart, LeFevre, Zimmerman, Pafford, Maday, Herbrand or Wogernese acted with deliberate indifference to plaintiff's complaints of methadone withdrawal symptoms or foot pain.  Therefore, those defendants are entitled to summary judgment on plaintiff's Eighth Amendment claims against them.

Although plaintiff's averments with respect to defendants Isaacson, Trimble and DeLong not much more detailed, they might permit a reasonable jury to conclude that these defendants acted with deliberate indifference to plaintiff's complaints of suffering from methadone withdrawal by failing to contact the health services unit.  Defendants concede that if plaintiff had informed a correctional officer about his severe foot pain or withdrawal symptoms, the officer would have informed the health services unit and someone in that unit would have told the officer whether plaintiff had to be seen immediately.  According to plaintiff's version of the facts, he repeatedly told defendants Isaacson, Trimble and DeLong

20

over a three-day period that he was in pain and experiencing symptoms of methadone withdrawal.  If the jury believed plaintiff, it could conclude reasonably that these defendants acted with deliberate indifference to plaintiff's serous medical needs.   Although giving plaintiff a health services form to complete may have been a reasonable response to a one-time complaint of pain, such a response may be less reasonable after three days of repeated complaints.  I note that the fact that plaintiff failed to describe his withdrawal symptoms in his health services requests and noted on those requests that he did not need to see health services staff suggests that his symptoms were not severe or of immediate concern, but it will be up to the jury to make the final decision both about the extent to which plaintiff was experiencing pain and what he told defendants Isaacson, Trimble and DeLong.  Accordingly, defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claims against defendants Isaacson, Trimble and DeLong will be denied.

## B.  Defendant Suliene

### 1.  Lack of treatment until March 28, 2007

Plaintiff asserts that defendant Suliene exhibited deliberate indifference when she failed to see him for his complaints of methadone withdrawal symptoms and foot pain until March 28, 2007.  Defendants contend that Dr. Suliene did not treat plaintiff for methadone withdrawal in February 2007 because she did not know that he had been taking it or that

21

he was suffering any symptoms after stopping it.  Plaintiff alleges that he was going through methadone withdrawal during the first few weeks following his transfer to the Columbia Correctional Institution.  However, it is undisputed that plaintiff did not mention his withdrawal symptoms in the nine health services requests that he made in February and March 2007.  (On February 22, 2007, plaintiff submitted a health services request stating only that he had a "large twitch" and specifically stated that he did not want to see health services staff.)  He also fails to adduce any other evidence showing how defendant Suliene would have known about those symptoms.  Accordingly, defendant Suliene is entitled to summary judgment in her favor on plaintiff's claim that she acted with deliberate indifference to his methadone withdrawal symptoms.

Similarly, there is no evidence that defendant Suliene knew that plaintiff was suffering from foot pain until mid-March 2007.  Although plaintiff points out that he made several health services requests in February and March 2007, there is no evidence showing that Suliene received those requests or had a chance to respond to them.  Also in February 2007, plaintiff filed an inmate complaint about the lack of treatment for his foot pain.  Although plaintiff contends that Suliene received an email copy of the complaint examiner's decision, that decision was not issued until March 14, 2007.  Given this evidence, no reasonable jury could conclude that defendant Suliene knew about any of plaintiff's medical needs until mid-March 2007.  Within two weeks of learning about plaintiff's foot pain,

22

Suliene saw and treated plaintiff.  Because defendant Suliene did not delay unreasonably the treatment of plaintiff's foot pain, she is entitled to summary judgment on plaintiff's deliberate indifference claim related to that issue.

2.  Refusal to prescribe methadone

Plaintiff takes issue with the fact that after seeing him on March 28, 2007, defendant Suliene chose not to treat his foot pain by putting him back on methadone.  Because plaintiff received some medical care, it is his burden to show that the care he received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" his medical condition.  Snipes, 95 F.3d at 592.  The undisputed facts show that Dr. Suliene saw plaintiff numerous times for his pain, prescribed several different medications and recommended neurology and  podiatry consultations for plaintiff.

Dr. Suliene chose to treat plaintiff with Gabapentin, a pain medication that addresses neuropathic pain.  Although plaintiff contends that the Gabapentin was completely ineffective and that he remained in unbearable pain as a result, he stopped taking it before it could start working.  After plaintiff complained to Suliene on April 28, 2007, Suliene increased the dosage of the Gabapentin.  When plaintiff complained again on May 25, 2007, Suliene asked plaintiff in writing whether he was taking the increased dosage of Gabapentin and advised him that he had an upcoming doctor's appointment.  However, plaintiff failed

23

to respond to Suliene's question and wrote in a June 13, 2007 health services request that he had not taken the Gabapentin for two and a half months (or since the end of April 2007). That same day, plaintiff signed a form stating that he voluntarily refused to take Gabapentin.  As an alternative, Suliene prescribed Tylenol.  She also recommended a neurology consultation at that time.

Between July and September 2007, plaintiff submitted several health services requests complaining about foot pain.  However, during an August 6, 2007 sick call appointment, the nurse noted that plaintiff was continuing his previously reported exercise regimen and that his pain did not appear to affect his functioning or activities.  On August 8 and August 14, 2007, plaintiff refused to go to medical exams that were scheduled to address his foot pain. Nonetheless, on September 3, 2007, Dr. Suliene asked plaintiff whether he would like to start taking Gabapentin again.  On September 26, 2007, she prescribed propoxyphene because plaintiff had stated it had helped his pain in the past.  On October 2, 2007, Suliene changed the prescription to Darvocet N, which is the brand name of propoxyphene.

After plaintiff again complained of foot pain on November 8, 2007, Suliene increased plaintiff's Darvocet N to four times a day.  On January 8, 2008, Suliene ordered plaintiff an ankle sleeve at his request and prescribed Tramadol, a non-narcotic analgesic, but discontinued it on January 14 because it would interfere with the amitriptyline that plaintiff

was taking.  Instead, she continued plaintiff on Darvocet N.  After plaintiff stopped taking amitriptyline on February 1, 2008, Suliene prescribed Tramadol for plaintiff again.

Between February 6 and June 26, 2008, plaintiff did not complain about foot pain. Although correctional officers reported to health services staff on June 26, 2008 that plaintiff appeared to be walking with difficulty because of a sore foot, plaintiff reported that he had done a cartwheel in his cell and hit his heel against the wall.  In August 2008, plaintiff complained of heel pain because he did a "windmill" in his cell and hit his heel against the wall.

On October 21, 2009, plaintiff saw Dr. Stanek, a neurologist at the University of Wisconsin Hospital and Clinics, who recommended Gabapentin, nortipityline and a small dose of methadone.  However, soon thereafter, Dr. Suliene and Dr. Stanek agreed to prescribe only Gabapentin and nortriptyline and if these proved ineffective, they would add methadone to the combination.  Suliene also ordered a podiatry consultation, which plaintiff underwent on November 23, 2009.

Although other doctors may have prescribed methadone for plaintiff's pain, it is well established that a difference of opinion among medical personnel regarding treatment does not give rise to a finding of deliberate indifference.  Estelle, 439 U.S. at 19; Estate of Cole, 94 F.3d at 261.  Without more, plaintiff cannot show that defendant Suliene's treatment decisions with respect to his foot pain were unreasonable or blatantly inappropriate.  After

learning of his foot pain, Suliene responded to plaintiff's requests for examinations, prescribed pain medication and consulted with various specialists.  Further, although plaintiff avers that he was in unbearable pain without methadone, there is evidence that he refused some of the treatment he was given, canceled doctor's appointments, went for months without complaining of pain and was able to engage in physical activity.  Therefore, defendant Suliene is entitled to summary judgment on plaintiff's claim that her failure to treat his foot pain by prescribing methadone constituted deliberate indifference.

3.  Tramadol side effects

Plaintiff asserts that one of the medications that Dr. Suliene prescribed, Tramadol, caused him to be angry and have strong thoughts of suicide.  Aside from his own affidavit, plaintiff has submitted no evidence showing that these side effects were attributable to the Tramadol that he was taking.  However, even assuming that they were, plaintiff's claim fails because he has submitted no evidence that defendant Suliene was deliberately indifferent to those side effects.  Suliene took the initiative to consult with plaintiff's psychiatrist and together they agreed that Tramadol was not harming him.  Further, it is undisputed that Suliene would have considered other options for plaintiff if he had wanted them.  Plaintiff was informed that he was taking Tramadol voluntarily and was given the option of discontinuing it if he believed it to be causing him harm.  However, he chose to continue

26

taking it.  Therefore, with respect to this claim, defendants' motion for summary judgment

will be granted and plaintiff's motion for summary judgment will be denied.


C.   Defendants Sitzman, Aslum and Raemisch

By moving for summary judgment in this case, defendants challenged plaintiff to

produce evidence from which a reasonable jury could find in his favor on his retaliation

claim.  Johnson v. Kingston, 292 F. Supp. 2d 1146, 1152-53 (W.D. Wis. 2003).  To survive

summary judgment, plaintiff must adduce sufficient evidence that would allow a reasonable

jury to find defendants were deliberately indifferent to his serious medical needs.  Plaintiff

has failed to do this with respect to defendants Sitzman, Alsum and Raemisch.

In his complaint, plaintiff alleged that defendant Sandra Sitzman, the health services

unit manager at the institution, took no action when he told her that he was in pain after

Dr. Suliene had stopped his methadone.  However, plaintiff has failed to propose any

findings of fact in response to defendants' summary judgment motion to support his claim.

In his brief opposing summary judgment, plaintiff states that defendant Sitzman told the

inmate complaint examiner in February 2007 that plaintiff did not have a current

prescription for methadone and that he would be seen by a doctor to assess his medication

needs.  The only other evidence with respect to Sitzman's involvement was adduced by

27

defendants and shows that Sitzman merely reviewed plaintiff's medical records and responded to an inmate complaint examiner about the treatment he had received.

Similarly, plaintiff avers but does not propose as a finding of fact that he told defendant Alsum about the side effects that he was experiencing while on Tramadol. However, it is undisputed that Alsum's involvement in plaintiff's health care was limited to reviewing relevant portions of his medical record and providing information to the inmate complaint examiner and reviewing and responding to three of his health services requests. Finally, the only evidence adduced against defendant Raemisch is that he accepted the recommendation of the corrections complaint examiner to deny three of plaintiff's offender complaints.

In responding to the complaints and requests filed by plaintiff, both Sitzman and Alsum relied on the clinical judgment of Dr. Suliene, who had evaluated plaintiff. Raemisch relied on the recommendation of the corrections complaint examiner, who relied on the independent medical assessment of the regional nursing coordinator. No reasonable jury could find from these facts that Sitzman's, Alsum's and Raemisch's failure to do more amounted to deliberate indifference. Johnson v. Snyder, 444 F.3d 579, 586 (7th Cir. 2006) (affirming summary judgment for health administrator who relied on plaintiff's medical record and doctor's treatment decisions); Johnson v. Doughty, 433 F.3d 1001, 1015 (7th Cir. 2006) (affirming directed verdict for health care administrator who responded

28

appropriately to inmate's complaints of worsening symptoms and relied reasonably on doctor's professional opinions).

ORDER

IT IS ORDERED that

1.   Plaintiff Luis Ranirez's motion for partial summary judgment, dkt. #46, is DENIED.

2.   Defendants Faye Hart and Thomas Schoenberg are DISMISSED.

3.   The motion for summary judgment of defendants, dkt. #52, is GRANTED with respect to plaintiff's claims against defendants Dr. Suliene, Rick Raemisch, Sandra Sitzman, Lori Alsum, Leslie Winslow-Stanley, Faye Hart, Thomas Schoenberg, Stanley Maday, Jr., Isaac Hart, Maury Thill, Jacob Zimmerman, William LeFevre, Mickey Paul Pafford, Lucas Wogernese and Brian Herbrand and DENIED with respect to plaintiff's claims against defendants Mark Isaacson, Victor Trimble and Curtis DeLong.

Entered this 18th day of June, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

29